# UNITED STATES DISTRICT COURT
for the
_____ District of _____

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)* | )<br>)<br>)  Case No.   20MJ5342<br>)<br>)<br>) |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

located in the _____ District of _____ , there is now concealed *(identify the person or describe the property to be seized)*:

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
  ❐ evidence of a crime;
  ❐ contraband, fruits of crime, or other items illegally possessed;
  ❐ property designed for use, intended for use, or used in committing a crime;
  ❐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| | |

The application is based on these facts:

  ❐ Continued on the attached sheet.
  ❐ Delayed notice of \_\_\_\_\_ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Matthew Steuernagel*
Applicant's signature

_____
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by _____ *(specify reliable electronic means)*.

Date: 12/11/20

*Jill Burkhardt*
Judge's signature

City and state: _____

_____
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF
# APPLICATION FOR SEARCH WARRANT

I, Matthew W. Steuernagel, a Special Agent with the United States Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations, having been duly sworn, depose and state as follows:

## INTRODUCTION

1. This affidavit is made in support of an application for a warrant to search the Black GPS Tracking Device seized under Seizure Number 2021250400013401-0005 (the "**Target Device**"). The **Target Device** was found concealed in the spare tire well, inside the trunk of a 2011 Hyundai Elantra that Nancy Consuelo LUGO drove into the United States on October 13, 2020; the Hyundai Elantra was then found to contain about 34.84 kilograms of methamphetamine.

2. The **Target Device**, which is further described in Attachment A, is currently in the possession of Homeland Security Investigations, 880 Front Street, San Diego, CA 92101, within the Southern District of California. This warrant seeks permission to seize evidence of violations of federal law found on the **Target Device**, namely violations of 21 U.S.C. §§ 952, 960, and 963, as set forth in Attachment B.

3. Based on the information below, there is probable cause to believe that a search of **Target Device** will produce evidence of the aforementioned crimes, as described in Attachment B.

4. The information contained in this affidavit is based upon my experience and training, and consultation with other federal, state, and local law enforcement agents. Because this affidavit is made for the limited purpose of obtaining a search warrant for the **Target Device**, it does not contain all of the information known by me or other federal agents regarding this investigation, but only contains those facts believed to be necessary to establish probable cause.

**EXPERIENCE AND TRAINING**

5. I am currently a Special Agent with the United States Department of Homeland Security, Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI). I have been employed by ICE/HSI as a Special Agent since November 2018. Prior to becoming a Special Agent, I served as a Federal Air Marshal with the Federal Air Marshal Service from 2009 to 2018. I also served as a Parole Officer with the Ohio Adult Parole Authority from 2005 to 2008.

6. I earned a dual Bachelor of Arts degree in Criminal Justice Studies and Applied Conflict Management from Kent State University in 2002. Additionally, I earned a Master of Arts degree in National Security and Strategic Studies from the United States Naval War College in 2018.

7. As a Special Agent for HSI, I am responsible for investigating laws enumerated in Title 8, Title 18, Title 19 and Title 21 of the United States Code. Included in my responsibilities is the investigation of illicit contraband-smuggling, including narcotics-smuggling, across the United States border.

8. I have completed and graduated from the twelve-week Criminal Investigator Training Program as well as the fifteen-week Homeland Security Investigations Special Agent Training Program located at the Federal Law Enforcement Training Center in Glynco, Georgia. I have completed and graduated the Federal Air Marshal Training Program Phase I, located at the FLETC in Artesia, New Mexico, and FAMTP Phase II, located at the Federal Aviation Administration's William J. Hughes Technical Center in Egg Harbor Township, New Jersey. I have also completed the Ohio Department of Rehabilitation and Corrections' Basic Training Program and Parole Officer Training Program, located in Orient, Ohio.

9. From June of 2019 until October 2020, I was assigned to a HSI Contraband Smuggling Group in San Ysidro, California. My duties include investigating the illicit trafficking of controlled substances into the United States. During my assignment to the Contraband Smuggling Group, I have participated in the investigation of drug trafficking

organizations involved in the acquisition, importation, transportation, and distribution of controlled substances into and through the Southern District of California. Since October of 2020, I have been assigned to the HSI Costa Pacifico Money Laundering Task Force which focuses on money laundering and bulk cash smuggling of illicit proceeds on the Southwest Border.

10. Based upon my training and experience and consultations with law enforcement officers experienced in drug smuggling and trafficking investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

　　a. Drug smugglers and traffickers will use GPS devices because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit;

　　b. Drug smugglers and traffickers and their coconspirators will use GPS devices because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations;

　　c. Drug smugglers and traffickers will use GPS devices to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo;

11. Subscriber Identity Module (SIM) Cards, also known as subscriber identity modules, are smart cards that store data on GSM cellular devices. Depending on the device, such data can include user identity, location, phone numbers, network authorization data, personal security keys, and IP addresses. Much of the evidence generated by a smuggler's use of a GPS tracker would likely be stored on any SIM Card that has been utilized in connection with that device.

12. Based upon my training and experience and consultations with law enforcement officers experienced in drug smuggling and trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that GPS devices can and often do contain electronic records, including location data and telephone numbers or identifying information for individuals accessing GPS Devices directly or remotely through phones and/or computers. This information can be stored within disks, memory cards, deleted data,

remnant data, slack space, and temporary or permanent files contained on or in the GPS device. Specifically, I know based upon my training, education, and experience investigating drug smuggling and trafficking conspiracies that searches of GPS devices sometimes yields evidence:

    a. tending to indicate efforts to import controlled substances from Mexico into the United States, or possess and/or transport with the intent to distribute controlled substances within the United States;

    b. tending to identify coconspirators, criminal associates, or others involved in importation of controlled substances from Mexico into the United States, or possession and/or transportation with the intent to distribute controlled substances within the United States;

    c. tending to identify travel to or presence at locations involved in the importation of controlled substances from Mexico into the United States, or possession and/or transportation with the intent to distribute controlled substances within the United States, such as stash houses, load houses, or delivery points; and/or

    d. tending to identify the user of, or persons with control over or access to, the GPS device.

13. Based on my training and experience, and conversations with other law enforcement officers who investigate drug smuggling and trafficking, I know that drug conspiracies often require detailed and intricate planning to successfully evade detection. Consequently, drug conspiracies often involve planning and coordination for several months. This planning sometimes includes the use of GPS devices.

## FACTS SUPPORTING PROBABLE CAUSE

**A. Facts Leading to Seizure of the Hyundai Elantra and LUGO's Arrest**

14. On October 13, 2020, at approximately 11:35 PM, Nancy Consuelo LUGO, ("LUGO"), a United States citizen, applied for entry into the United States from Mexico through the San Ysidro Port of Entry in vehicle lane #7. LUGO was the driver, and

registered owner of a 2011 Hyundai Elantra ("the vehicle") bearing California license plates. LUGO was accompanied by her two minor children.

15.    A Customs and Border Protection Officer (CBPO) received two negative Customs declarations from LUGO. LUGO stated she was crossing the border to go to San Diego, California. The CBPO asked LUGO to unlock the vehicle and open the trunk. The CBPO lifted the spare tire wheel cover in the base of the trunk and observed saran wrapped packages which were off-white in color. The vehicle was then referred to secondary.

16.    A CBPO operating the Z-Portal X-Ray machine detected anomalies in the spare tire well of the vehicle.

17.    Further inspection of the vehicle resulted in the discovery of 75 packages concealed in the spare tire well, inside the trunk of the vehicle, with a total approximate weight of 34.84 kgs (76.809 lbs).  A sample of the substance contained within the packages field tested positive for the characteristics of methamphetamine.

18.    LUGO was placed under arrest at approximately 1:20 AM.

19.    During a post-Miranda interview, LUGO denied knowledge that the narcotics were in the vehicle. LUGO stated that he was traveling to her home in San Diego, California to sleep. LUGO stated she crossed into Mexico from the United States at about 2:38 PM.  LUGO said she met her boyfriend after crossing the border, took her kids to a medical clinic, ate dinner at a restaurant, went to the movies, and stopped at a store, prior to getting in line to cross back into the United States from Mexico. LUGO stated the vehicle was in her possession the entire time she was in Mexico and LUGO was the only person with keys to the vehicle. LUGO stated that maybe her boyfriend needed money and put the drugs in the vehicle, but LUGO did not witness him place any drugs in the vehicle. LUGO said her boyfriend had removed the spare tire from her vehicle in early September, but he had placed the spare tire back in the vehicle last week.

20.    LUGO was arrested and charged with a violation of Title 21, United States Code, 952 and 960, importation of a controlled substance.

### B. Discovery of the Target Device

21. At the time the drugs were discovered by CBPOs, a CBPO observed the **Target Device** in the same spare tire well which contained the methamphetamine and was located inside the trunk of the Hyundai Elantra. CBPOs subsequently seized the **Target Device**.

### C. LUGO's Prior Travel Pattern

22. According to law enforcement database checks, LUGO crossed inbound from Mexico into the United States three times in between September of 2019 and April of 2020. On May 17, 2020, LUGO crossed inbound from Mexico into the United States in a 2012 Kia bearing California license plate 7BMK715. The 2012 Kia was registered to the LUGO and another individual on July 17, 2020, although a change in ownership appears to have occurred on April 22, 2020. LUGO crossed the 2012 Kia inbound from Mexico into the United States about 14 times from May 17, 2020 and September 4, 2020.

23. On September 15, 2020, LUGO began crossing the vehicle she was arrested in on October 13th. The vehicle was registered to Defendant on August 29, 2020.

### D. Training and Experience About GPS Devices

24. Based upon my experience and investigation in this case, I believe that LUGO, as well as other persons yet unknown, were involved in the importation of narcotics. Based upon my experience and training, and in consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I also believe LUGO and others used the **Target Device** to coordinate with co-conspirators regarding the importation and delivery of the controlled substances, and to otherwise further the conspiracy both inside and outside the United States. There is also probable cause to believe that electronic records, including location data and telephone numbers or identifying information for individuals accessing the **Target Device** directly or remotely through phones and/or computers are stored in the memory of the **Target Device**, which may identify other persons involved in drug-trafficking activities.

25. I know that drug conspiracies require detailed and intricate planning to successfully evade detection by law enforcement. In my professional training and experience, this requires planning and coordination in the days and weeks and often months prior to the event. Additionally, co-conspirators are often unaware of the subject's arrest and will continue to attempt to communicate with the subject after the arrest to determine the whereabouts of their valuable cargo. Based on my training and experience, individuals such as LUGO will attempt to minimize the amount of time they were involved in their smuggling activities and often times are actually involved for weeks and months longer than they claimed to be involved. Additionally, investigators are aware that changes in an individual's crossing pattern and the registration of new vehicles into the individual's name, can be indicators that the individual is involved in smuggling activity. Given those facts, I respectfully request permission to search the **Target Device** for items listed in Attachment B beginning on May 1, 2020, up to and including the entire day of October 14, 2020.

## **METHODOLOGY**

26. It is not possible to determine, merely by knowing a GPS device's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. GPS devices today can have functions such as full address books and can be mini-computers. An increasing number of GPS devices now allow users to access them remotely with computers or with a cellular phone and remotely erase all of the data contained on the device. For that reason, the device may only be powered in a secure environment. Many GPS devices do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some GPS device models using forensic hardware and software. This process is time and labor intensive and may take weeks or longer.

27. Following the issuance of this warrant, I will collect the **Target Device** and subject it to analysis. All forensic analysis of the data contained within the **Target Device**

7

and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

28. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within 90 days, absent further application to this court.

## CONCLUSION

29. Based upon my experience, training, and consultation with other law enforcement officers experienced in narcotics smuggling investigations, and all the facts and opinions set forth in this affidavit, I believe there is probable cause to conclude that the **Target Device** was used to facilitate the offense of importation of controlled substances. The **Target Device** was likely used to facilitate the offense by transmitting and storing data, which constitutes evidence of violations of 21 U.S.C. §§ 952, 960, and 963.

30. Because **Target Device** was seized immediately inside the vehicle during the investigation of LUGO's smuggling activities and has been securely stored, there is also probable cause to believe that evidence of the illegal activities committed by LUGO, as described in Attachment B, continues to exist on the **Target Device**.

31. Therefore, I respectfully request that the Court issue a warrant authorizing HSI Special Agents and/or other federal and state law enforcement officers specially trained in digital evidence recovery, to search the **Target Device**, as described in Attachment A, and seize the items listed in Attachment B, using the methodology described above.

I swear the foregoing is true and correct to the best of my knowledge and belief.

*Matthew Steuernagel*
Special Agent Matthew Steuernagel
Homeland Security Investigations

Sworn and attested to under oath by telephone, in accordance with Federal Rule of Criminal Procedure 4.1, this __11th__ day of December, 2020.

*Jill Burkhardt*
Honorable Jill L. Burkhardt
United States Magistrate Judge

9

# ATTACHMENT A
## PROPERTY TO BE SEARCHED

The property that is to be searched is a black GPS Tracking Device seized under Seizure Number 2021250400013401-0005 (the "**Target Device**"). The Target Device was found concealed in the spare tire well, inside the trunk of a 2011 Hyundai Elantra that Nancy Consuelo LUGO drove into the United States on October 13, 2020,

The **Target Device** is currently in the possession of Homeland Security Investigations, 880 Front Street, San Diego, CA 92101, within the Southern District of California.

## ATTACHMENT B

ITEMS TO BE SEIZED

Authorization to search the **Target Device** described in **Attachment A** includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the **Target Device** for evidence described below, between the dates of May 1, 2020, up to October 14, 2020. The seizure and search of the **Target Device** shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the **Target Device** will be location data and identifying information of individuals accessing the device, including telephone numbers and identifying information for phones and/or computers remotely accessing the device:

a. tending to indicate efforts to import methamphetamine, or some other controlled substances, from Mexico into the United States;

b. tending to identify coconspirators, criminal associates, or others involved in importation of methamphetamine, or some other controlled substances, from Mexico into the United States;

c. tending to identify travel to or presence at locations involved in the importation of methamphetamine, or some other controlled substances, from Mexico into the United States; and/or

d. tending to identify the user of, or persons with control over or access to, the **Target Device**;

which are evidence of violations of Title 21, United States Code, Sections 952, 960, and 963.

11